UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
UNITED STATES OF AMERICA,

        -against-

DAQUAN WAGNER,

                Defendant.
-------------------------------------X

**FILED**
**CLERK**

12:33 pm, May 31, 2024

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

ORDER
17-CR-0106(JS)

APPEARANCES

For Defendant:     Daquan Wagner, <u>Pro Se</u>
                    Reg. No. 80009-053
                    U.S.P. Beaumont
                    P.O. Box 26030
                    Beaumont, Texas  77720

For United States:  Michael R. Maffei, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    610 Federal Plaza
                    Central Islip, New York  11722

SEYBERT, District Judge:

       Currently before the Court is the <u>pro se</u> motion of Defendant Daquan Wagner ("Defendant") seeking compassionate release in the form of a sentence reduction (hereafter, the "Motion"). (<u>See</u> Motion, ECF No. 360; <u>see also</u> Reply, ECF No. 364.) The Government opposes the Motion. (<u>See</u> Opp'n, ECF No. 362.) For the following reasons, the Motion is **DENIED**.

RELEVANT BACKGROUND

I.  <u>Defendant's Underlying Conviction</u>

       The Court assumes the parties' familiarity with Defendant's conviction. By way of general background, the Court provides the following summary. Defendant was a Bloods gang

member, holding a leadership role, whose crew operated in and around Roosevelt, New York (hereafter, the "Gang"). (See Wagner Presentence Investigation Report ("PSR"), ECF No. 183 (sealed), ¶¶ 2-4; see also Opp'n at 2.) In late November through early December 2016, Defendant and other Gang members conspired to rob a Crips gang member,[1] who was a drug dealer. (See Opp'n at 2.) At that time, Defendant was residing at the Brooklyn, New York Residential Reentry Center ("RRC"), where he was serving the balance of a prior 2012 federal conviction for weapons possession. (Id. (citing PSR at ¶ 9).)

After an aborted attempt to rob the Crips drug dealer, a second attempt was made by two Bloods members on December 5, 2016. (See Opp'n at 2 (citing PSR at ¶¶ 10-11).) In planning this second attempt, Defendant instructed one of the two Gang members to bring a firearm to the robbery. (See id. (citing PSR at ¶ 11).) Ultimately, law enforcement intervened, preventing the robbery and arresting two Gang-member coconspirators. (See id.) On March 6, 2017, while reporting to the Probation Department in accordance with conditions of his supervised release for his prior federal firearms conviction, Defendant was arrested for his

---

[1] The Crips – another gang -- are rival of the Bloods. (See PSR ¶ 2); see also generally Thawney v. City of N.Y., No. 17-CV-1881, 2028 WL 4935844 (S.D.N.Y. Oct. 11, 2018) (acknowledging the "violent rivalry" between the Crips and Bloods, which "is 'long-standing and well-documented'" (quoting Walker v. Shaw, No. 08-CV-10043, 2010 WL 2541711, at *8 (S.D.N.Y. June 23, 2010)).

participation in the instant attempted robbery of the drug dealer. (See Opp'n at 2 (citing PSR ¶ 16).)

On June 18, 2018, and pursuant to a plea agreement with the Government, Defendant pled guilty to Count 14 of a 19-count Second Superseding Indictment. (See Minute Entry, ECF No. 149 (change of plea); Judgment, ECF No. 270.) Count 14 charged Defendant with conspiring with others to commit Hobbs Act robbery, i.e., the robbery of the drug dealer, in violation of 18 U.S.C. § 1951(a). (See Opp'n at 2; see also Judgment.) Defendant was sentenced on June 20, 2019 to 115 months' imprisonment, followed by three years' supervised release.[2] (See Sent'g Hr'g Minute Entry, ECF No. 268; Judgment.)

Defendant is currently serving his sentence at the high security penitentiary in Beaumont, Texas (hereafter, "USP Beaumont"); he has an anticipated release date of July 27, 2025. (See Opp'n at 1 n.1, and 4); see also Fed. Bureau of Prisons ("BOP"): Find an Inmate, Daquan Wagner (BOP Reg. No. 80009-053) (hereafter, the "Wagner Locator Information") (identifying Defendant's location as "USP Beaumont"), https://www.bop.gov/inmateloc/ (last visited May 21, 2024).

---

[2] Honorable Sandra J. Feuerstein was the sentencing judge; the case was subsequently assigned to the undersigned. (See Case Docket; see also Reply at 3.)

II.  <u>Relevant Procedural History</u>

Defendant moved for compassionate release on March 13, 2023.  (<u>See</u> Motion.[3])  Said Motion is fully briefed.  The Court proceeds to explain its decision to deny the Motion

DISCUSSION

I.  <u>Applicable Law</u>

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  <u>United States v. Rabuffo</u>, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting <u>United States v. Gotti</u>, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)).  The First Step Act, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request <u>by the warden of the defendant's facility</u>, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A) (emphasis added); <u>see also United States v. Thrower</u>, 495 F. Supp. 3d 132, 137 (E.D.N.Y. 2020).  "The statute imposes three independent, necessary requirements for

---

[3]  The Court notes: (1) while Defendant's Motion is dated March 7, 2023, it was not filed with the Court until March 13, 2023 (<u>see</u> Motion at 1); and (2) Defendant has a pending Section 2255 habeas petition premised upon alleged ineffective assistance of counsel (<u>see</u> ECF No. 327).  Defendant's habeas petition will be decided in a separate memorandum and order.

Page 4 of 23

release: exhaustion of remedies, existence of an extraordinary and compelling reason for sentence reduction, and that the § 3553(a) [F]actors warrant reduction." United States v. Hunter, No. 21-1773, 2022 WL 2288688, at *1 (2d Cir. June 24, 2022) (citing United States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam)). "A defendant's failure to exhaust administrative remedies is a threshold matter preventing the [c]ourt from considering a Section 3582 application[, i.e., a motion for compassionate release]." United States v. Robinson, No. 10-CR-0789, 2022 WL 16924176, at *3 (E.D.N.Y. Nov. 14, 2022) (quoting United States v. Alvarez, No. 89-CR-0229, 2020 WL 4904586, at *2 (E.D.N.Y. Aug. 20, 2020)); see also United States v. Torres, No. 16-CR-0500, 2022 WL 538323, at *2 (S.D.N.Y. Feb. 23, 2022) ("Before a compassionate-release motion can be considered on the merits, the defendant must exhaust administrative remedies." (quoting United States v. Williams-Bethea, 464 F. Supp. 3d 562, 565 (S.D.N.Y. 2020)). And, "[i]f any one requirement is not satisfied, the district court may deny the motion without considering the remaining requirements." Hunter, 2022 WL 2288688, at *1 (citing Keitt, 21 F.4th at 72–73).

Where exhaustion is satisfied, in their consideration of motions brought pursuant to the First Step Act, courts are not restricted to the Sentencing Commission's applicable policy statements, but may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before

them in motions for compassionate release." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020); see also Keitt, 21 F.4th at 71 ("A court deciding a compassionate release motion can consider 'the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it].'" (alteration in original) (quoting Brooker, 976 F.3d at 237)).  Indeed, "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" Brooker, 976 F.3d at 237-38 (emphasis and alteration in original) (quoting 28 U.S.C. § 994(t)); see also Ambrosio, 541 F. Supp. 3d at 254 (same).  "Additionally, district courts may consider 'intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act.'" United States v. Monteleone, No. 92-CR-0351, 2023 WL 2857559, at *2 (E.D.N.Y. Apr. 10, 2023) (quoting Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022)).

Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) [F]actors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) [F]actors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y.

May 8, 2020) (citation omitted); see also United States v. Jones, No. 22-2008-cr, 2023 WL 8613867, at *2 (2d Cir. Dec. 13, 2023) (same).  "The defendant bears the burden of showing that the circumstances warrant a sentence reduction."  United States v. Sellick, No. 21-2328, 2022 WL 16936829, at *1 (2d Cir. Nov. 15, 2022) (summary order) (citing United States v. Jones, 17 F.4th 371, 375 (2d Cir. 2021)); see also United States v. Friedlander, No. 20-CR-0441, 2022 WL 2305370, at *3 (E.D.N.Y. June 24, 2022) ("A defendant 'bears the burden of showing that his release is justified.'" (quoting United States v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020)).

## II.  Application

### A.  Exhaustion

Defendant claims he exhausted the applicable administrative remedy by making a January 22, 2023 email request to "Warden USP" which, after 30 days, has gone unanswered.  (See Motion at 6 ("To date, over thirty days has elapsed since Wagner made his request in writing, but the Warden has not answered the request."); see also Jan. 22, 2023 email, Ex. A, ECF No. 360 at ECP p.18, attached to Motion; Ex. A, ECF No. 364 at ECF p.10, attached to Reply (same email).)  The Government challenges Defendant's claim that he has exhausted his administrative remedy since, according to the Government, Defendant's warden-request was made to the warden of a different facility and not the one in which

he is currently housed, _i.e._, not "by the warden of the defendant's facility".   18 U.S.C. § 3582(c)(1)(A); (_see also_ Opp'n at 4 (stating Government was informed that "USP Beaumont had not received the request" but "[D]efendant had previously submitted a request to the warden of USP Big Sandy in June of 2022, and that request was denied in August of 2022").)   Other than this general representation, the Government's contention is not supported by any persuasive evidence.   Weighing the Government's representation agasint Defendant's submission of his January 22, 2023 email, the Court finds Defendant has satisfied his burden of establishing administrative exhaustion.   It, therefore, proceeds to examine Defendant's claim of extraordinary circumstances warranting compassionate release.

B.   Defendant has Failed to Establish the Existence of Extraordinary and Compelling Circumstances

Defendant is currently 36-years-old.   _See_ Wagner Locator Information.   He asks the Court to collectively consider the following:   the purported sentencing disparity between Defendant and his co-defendants, with Defendant being sentenced to a longer sentence (_see_ Motion at 7-10); Defendant's self-characterized minor role in the offense (_see id._ at 9-10); the alleged incorrect calculation of Defendant's offense level; Defendant's health, _i.e._, that he is pre-diabetic, has high blood pressure, and is obese, which could elevate COVID-related risks (_id._ at 12), as

well as his depression (see Reply at 6); the current, harsher-than-anticipated conditions in prison due to the Pandemic, such as chronic lockdowns which interfered with Defendant's ability to participate in and/or complete classes, (see Motion at 12-13, 14); Defendant's rehabilitation efforts, including taking "a number of classes & programs that have proven to reduce recidivism", as well as acting as a mentor for new inmates (see id. at 13-15); and, Defendant's post-release plan to relocate to South Carolina to live close to family, who will be a source of support and employment (see Reply at 8). Yet, neither individually nor in concert are these circumstances extraordinary or compelling.

As to the Alleged Sentencing Disparity: "The court, in determining the particular sentence to impose, shall consider," among other things, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(2)(6) (emphases added). Of significance, "[h]owever, a court is not required to consider disparities between co-defendants." United States v. Johnson, 671 F. Supp. 3d 265, 283 (E.D.N.Y., 2023) (citing United States v. Frias, 521 F.3d 229, 236 (2d Cir. 2008); United States v. Medina, 607 F. App'x 60, 61 (2d Cir. 2015) (summary order)).

As stated supra, when arrested in connection with this criminal case, Defendant Wagner was under supervised release for

his prior federal firearms conviction.  (See Opp'n at 2 (citing PSR ¶ 16); see also id. at 3 ("A fact glaringly absent from the defendant's baseless motion is that the defendant committed the instant offense while in federal custody.").)  This, coupled with Defendant's "twelve prior criminal convictions, incurred over a nine-year span," was a factor considered by the sentencing court in fashioning its sentence.  (See id. at 3.)

Now, other than stating the length of the sentences received by his co-defendants (see Motion at 7-9), Defendant does not explain whether his co-defendants had similar records or were, like him, on supervised release and residing in an RRC, when participating in the instant offense.  Relatedly, Defendant "offers the Court no insight into what factors led to those defendants' respective sentences."  (Opp'n at 12.)  Yet, as the party seeking a sentence reduction, it is Defendant's burden to do so.  See generally United States v. Lake, No. 14-CR-0264, 2023 WL 8810620, at *3 (E.D.N.Y. Dec. 20, 2023).  Thus, at a minimum, the absence of such information stymies the Court's ability to assess whether there is any unwarranted disparity in Defendant's sentence.  Rather, as persuasively argued by the Government, Defendant "fails to establish this is an extraordinary or compelling reason to reduce his sentence."  (Id.)  This is especially true since a court need not "consider disparities between co-defendants."  Johnson, 671 F. Supp. 3d at 283.

As to COVID-19 and Defendant's Alleged Health Issues: "Since the decline of COVID-19 cases and proliferation of vaccines, courts in this Circuit have generally rejected compassionate release motions based on the threat posed by the virus, asserting that 'the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors.'" Johnson, 671 F. Supp. at 280 (quoting United States v. Oquendo, No. 13-CR-0357, 2023 WL 199609, at *4 (S.D.N.Y. Jan. 17, 2023)). "In evaluating whether an individual's current risk from the pandemic warrants compassionate release, courts have examined their vaccine status, the COVID-19 situation at their specific correctional facility, and whether their co-morbidities are being managed." Id. (citations omitted). Further, as to COVID-19 variants, such variants are "considered less severe in causing illness and death." Mayes v. United States, No. 12-CR-0385, 2023 WL 22632, at *4 (E.D.N.Y. Jan. 3, 2023).

First, in considering Defendant's vaccine status, on four occasions, Defendant has declined receiving the COVID-19 vaccine. (See Opp'n at 5-6.) As the Government persuasively argues, by his declining the vaccine, Defendant has voluntarily "forgo[ne] the opportunity for 'self-care' that BOP made available." (Id. at 8.) This, decidedly, weighs against finding Defendant's claimed co-morbidities compel the granting of compassionate release. See, e.g., United States v. Jackson, Crim.

No. 07-40-2, 2021 WL 1145903, at *2 (E.D. Pa. Mar. 25, 2021) ("Where Jackson bears the burden of demonstrating her entitlement to relief, the Court finds that her unexplained refusal to accept a COVID-19 vaccination when offered negates her otherwise compelling medial reasons[, i.e., obesity, type II diabetes, hypothyroidism, hypertension, asthma, and high cholesterol,] for release."); (see also Opp'n at 8-9 (collecting cases denying compassionate release motions where inmates claimed heightened risks of illness because of their co-morbidities if infected with COVID-19, but refused offered COVID-19 vaccinations).) Thus, Defendant has failed to show that his alleged medical conditions "so incapacitate him as to warrant a reduction of his sentence." United States v. Lisi, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020) ("BOP's guidance, read in conjunction with the Application Notes to § 1B1.13 [of the U.S. Sentencing Guidelines], indicate that a defendant's medical condition must be one of substantial severity and irremediability, and [defendant] has not shown that he suffers from such conditions."). Defendant has not offered any reply refuting the Government's contentions in this regard. (See Reply, in toto.)

        Second, in considering the COVID-19 situation at USP Beaumont, one must recognize that the COVID-19 Public Health Emergency ended on May 11, 2023. See U.S. Dep't Health & Human Servs., Fact Sheet: End of the COVID-19 Public Health Emergency,

available at https://hhs.gov/about/news/2023/05/09/fact-sheet-end-of-the-covid-19-public-health-emergency.html (last visited May 22, 2024). Therefore, it is no longer necessary for the BOP to engage in across-the-board special operations; indeed, UPS Beaumont is no longer reporting a COVID-19 Operational Level. See BOP USP Beaumont Home Page, available at https://www.bop.gov/locations/institutions/bmp/ (last visited May 22, 2024); compare BOP, Statistics: Inmate COVID-19 Data (reporting zero currently open COVID-19 cases at USP Beaumont), available at https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited May 24, 2024). Hence, the Court presumes the BOP has returned to operating USP Beaumont without COVID-19-related precautions, rendering this consideration of little weight. See, e.g., Jones, 17 F.4th at 375 (confinement in facility "where [COVID-19] counts are currently low" was not "extraordinary and compelling" circumstance).

Third, in considering Defendant's co-morbidities and their management, the Court notes Defendant has not provided any medical records substantiating the conditions he asserts he suffers;[4] yet, it is his burden to prove compassionate release is

---

[4]  The same holds true regarding Defendant's claim of mental health issues (see Reply at 6); since Defendant has not provided medical records documenting his mental health issues, the Court cannot

warranted.   Thus,  in  the  absence  of  records  demonstrating  he
suffers  from  the  co-morbidities  he  claims,  Defendant  cannot
sustain  his  burden  warranting  compassionate  release.   See, e.g.,
United States v. Brown,  No.  12-CR-0120,  2024  WL  1639926,  at  *3
(E.D.N.Y.  Apr.  16,  2024)  (finding,  where  defendant  provided  vague
allegations  regarding  his  medical  conditions--hypertension,  high
cholesterol,  prevalence  of  respiratory  illness,  and  other
unspecified  health  conditions--and  did  not  substantiate  his  claims
of  inadequate  medical  care,  defendant  failed  to  show  his  medical
conditions  constituted  extraordinary  and  compelling  reasons
warranting  a  sentence  reduction).   However,  even  assuming,
arguedo,  Defendant  "possesses  several  serious  co-morbidities,
including  [pre-]diabetes,  obesity,  hypertension  .  .  .  ,  courts  in
recent  months  have  deemed  similar  health  problems  insufficient  for
compassionate  release,  at  least  in  part  because  defendants  have
'worked  successfully  with  BOP  medical  professionals  to  address
[them].'"  Johnson,  671  F.  Supp.  3d  at  280  (finding,  even  in  light
of  Pandemic,  defendant's  co-morbidities,  did  not  constitute
extraordinary  and  compelling  reasons  for  release)  (quoting  United
States v. Oquendo,  No.  13-CR-0357,  2023  WL  199609,  at  *4  (S.D.N.Y.
Jan.  17,  2023));  see also  Oquendo,  2023  WL  199609,  at  *4  ("This
Court  continues  to  align  itself  with  those  courts  that  have  found

---

determine  if  this  is  a  basis  warranting  the  granting  of
compassionate  release.

'that the risks posed by the [P]andemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease.'" (quoting United States v. Nwankwo, No. 12-CR-0031, 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) (collecting cases))). Upon the record presented, there is no reason for the Court to conclude Defendant's co-morbidities are not being properly addressed by the BOP.

As to Harshness of Incarceration Caused by the Pandemic: "Undoubtedly, 'a day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison.'" Johnson, 671 F. Supp. 3d at 281 (quoting United States v. Mcrae, No. 17-CR-0643, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021)). Consequently, "particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic," courts have been willing to conclude that "pandemic-induced conditions of confinement can constitute extraordinary and compelling circumstances warranting compassionate release." Id. (quoting Oquendo, 2023 WL 199609, at *5, and collecting cases) (emphasis added); see also United States v. Russo, 643 F. Supp. 3d 325, 333 (E.D.N.Y. 2022) ("In addition to the health risks posed by the pandemic, the restrictions at

[federal correctional facilities] during the pandemic have made [defendants'] incarceration[s] much more punitive than originally contemplated at the time of sentencing[s]." (citing United States v. Rodriquez, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020)).

Yet, as the Government aptly argues, "[t]o the extent that the [D]efendant claims that the [P]andemic has made his incarceration more punitive than anticipated, 'these hardships do not set [him] apart from the rest of the BOP inmate population and therefore do not, alone constitute extraordinary and compelling reasons for his release.'" (Opp'n at 11 (quoting United States v. Johnson, No. 98-CR-0860, 2021 WL 1207314, at *4 (E.D.N.Y. Mar. 31, 2021)).) The Court agrees. See, e.g., United States v. Pinto-Thomaz, 454 F. Supp. 3d 327, 329 (S.D.N.Y., 2020) (observing "it is hard to see how" the BOP's implementation of various protocols in attempting to contain the spread of COVID-19 "ma[d]e the situations of [defendants] 'extraordinary' in terms of the statutory requirement, for in these respects [the defendants] are no different from a host of other prisoners"). Standing alone, the harshness of conditions Defendant faced during the Pandemic were the same as those endured by his fellow inmates; in that sense, they were not extraordinary. Nor, given the record, is this a case where, considering several circumstances in totality, the harshness factor should weigh in favor of finding an extraordinary and compelling reason for granting compassionate

release.  Compare United States v. Amerson, No. 05-CR-0301, 2023
WL 4497767, at *6 (E.D.N.Y. July 12, 2023) (finding where, among
other considered circumstances, defendant had served more than 18
years of a 32-year sentence, and suffered serious health
conditions, including type II diabetes which was worsening and
proving difficult for defendant to manage with necessary self-
care, "the harshness of COVID-related restrictions weigh[ed] in
favor of a sentence reduction even if they d[id] not independently
constitute an extraordinary and compelling reason to grant
compassionate release" (emphasis added)).

As to Defendant's Other Grounds for a Sentence
Reduction:  Defendant also asserts his Motion should be granted on
the following grounds:  (a) his lessor role in the conspiracy
(which Defendant describes as the "severity" of his offense); (b)
the purported improper calculation of his Guidelines range by the
sentencing court; and (c) his rehabilitation efforts, including
mentoring others.  None of these proffered grounds are availing.

First, Defendant argues his "was undeniably a minor
participant with no 'authority' to 'order' any of his co-
conspirators to cease their actions or to proceed" and, in any
event, "the robbery was never completed." (Motion at 8.) However,
the record establishes that while still under the authority of the
BOP, i.e., while he resided at the Brooklyn RRC serving another
sentence, Defendant helped plan and coordinate the armed robbery.

Yet, evaluating Defendant's culpability for the underlying offense compared to that of his co-conspirators is, as the Government argues, "just another way of phrasing his disparity argument." (Opp'n at 12.)  The Court already rejected this basis for granting Defendant's Motion.  (See supra at 9-10 (recognizing the sentencing court considered Defendant's role in the offense in fashioning its sentence).)  And, by entering a plea agreement, Defendant waived his rights to appeal his sentence as to the terms of imprisonment. (See Second Circuit Mandate, ECF No. 316.)  Defendant has offered nothing new to transform this argument into an extraordinary or compelling basis warranting a sentence reduction.

Second, Defendant challenges a one-point enhancement made in calculating his sentencing range, i.e., an added point because drugs were the object of the robbery.  (See Motion at 11.) He argues "[h]ad the [sentencing] Court ruled on the actual robbery goal . . . he would have faced" a lower Guidelines range.  (Id.) Defendant further assigns blame to his defense counsel for not requesting a Fatico hearing, which he contends resulted in his being assessed the one-point enhancement.  (See id. at 12.)  The Government counters that the proper way to challenge the enhancement is by appeal, but that by entering his plea agreement, Defendant waived his right to do so.  (Opp'n at 12.)  Indeed, because he waived his right to appeal, the Second Circuit granted the Government's motion to dismiss Defendant's direct appeal.  (Id.

(citing Second Circuit Mandate).)  Defendant's dissatisfaction
with that outcome does not present a platform upon which to base
his Motion.[5]

      Third, Defendant asserts he "has completed a number of
classes & programs that have proven to reduce recidivism." (Motion
at 13 (listing, by way of example, several programs Defendant has
completed); see also id. (listing additional classes Defendant
plans to attend).)  Additionally, Defendant claims he transferred
to USP Beaumont "to enroll in the residential Drug Abuse Program
(RDAP)" (id.); he has now participated in the RDAP even though he
will "not get the 12 months off for the program cause of the gun
enhancement." (Reply at 7 (stating further "I am simply here to
better myself and change the way I think and my attitude towards
life").)  Yet, it is well-settled that "rehabilitation alone shall
not be considered an extraordinary and compelling reason."
Brooker, 976 F.3d at 237-38 (citing 28 U.S.C. § 944(t)).

      In sum, even considering in combination all the
circumstances presented by Defendant, their totality does not rise
to the level of extraordinary and compelling.  Hence, Defendant
has not met his burden of showing entitlement to compassionate

---

[5]   To the extent Defendant challenges defense counsel's
representation of him (see, e.g., Reply at 3, 5), that, also, is
not a ground for granting this Motion.  (See also supra at note 2
(advising such challenge will be addressed in the Court's ruling
on Defendant's habeas petition).)

release.  See Jones, 17 F.4th at 374 ("Thus, extraordinary and compelling reasons are necessary—but not sufficient—for a defendant to obtain relief under § 3582(c)(1)(A).").

C.    The Section 3553(a) Factors

"The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) [F]actors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) [F]actors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." Gotti, 433 F. Supp. 3d at 615; see also Jones, 2023 WL 8613867, at *2 ("[A] district court may deny a motion for compassionate release in 'sole reliance' on the Section 3553(a) [F]actors, without determining 'whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction.'"); Jones, 17 F.4th at 374 ("[A] district court's 'reasonable evaluation of the Section 3553(a) [F]actos' is 'an alternative and independent basis for denial of compassionate release.'" (quoting United States v. Robinson, 848 F. App'x 477, 478 (2d Cir. 2021)).

> The [Section 3553(a) F]actors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the

> offense;" "to afford adequate deterrence to
> criminal conduct;" "to protect the public from
> further crimes of the defendant;" and "to
> provide the defendant with needed educational
> or vocational training, medical care, or other
> correctional treatment in the most effective
> manner." 18 U.S.C. § 3553(a)(1)-(2).

Johnson, 671 F. Supp. 3d at 283.

Here, Defendant does not meaningfully address the Section 3553(a) Factors. (See generally Motion and Reply.) Unsurprisingly, the Government does. (See Opp'n at 13-14.) It focuses upon the fact that Defendant's participation in the planning of the attempted armed robbery of a rival gang member drug dealer occurred while "he was serving the end of his prior federal sentence at the RRC." (Id. at 13.) As such, and "unlike his coconspirators, [this] demonstrate[s] the ultimate disrespect for the law . . . ." (Id. at 14.) The Court agrees: "The sentence in this case should remain unchanged as a sign that those who break the law while still owing a debt to society from prior criminal conduct will not be treated lightly." (Id.)

The Court observes that consideration of the Section 3553(a) Factors in this case bears a striking similarity to the Court's consideration of said Factors when ruling upon the compassionate release motion in the Lake case. There, the Court stated, in relevant part:

> As a member of the [rival Crips] Gang, one of
> the most violent on Long Island, [Lake]
> participated in the armed robbery of a drug

> dealer . . . .  Moreover, despite his relative young age when he first appeared before this Court, [Lake] already had a significant criminal history . . . .  Further, granting this Motion, which would effectively reduce [Lake]'s sentence . . . , would not provide a just punishment for the serious nature of the crime in which [Lake] participated, <u>i.e.</u>, an armed robbery.  Relatedly, granting [Lake]'s Motion upon the reasons he presents would not promote respect for the law.  Moreover, both specific and general deterrence weigh against awarding [Lake] early release.  As previously stated, at a young age, [Lake] came to this Court with numerous convictions; <u>and, he committed the instant offense while on probation for a state conviction</u>. <u>Additionally, gang members need to know their violent, illegal activities are intolerable, and those who choose to join gangs need to know they will be prosecuted, sentenced to substantial sentences, and required to serve those sentences</u>.

<u>Lake</u>, 2023 WL 8810620, at *6 (internal citations omitted; emphases added).  The same holds true here.  Indeed, given Defendant's criminal history and the facts of the instant case, Defendant has demonstrated disrespect for the law, especially the prior sentence of the Court he was serving when committing the instant offense.

Hence, having considered the applicable Section 3553(a) Factors, in its discretion, the Court finds, even if Defendant had presented extraordinary and compelling circumstances warranting compassionate release, <u>which he has not</u>, the Section 3553(a) Factors would override those circumstances.  Instead, the sentencing court's 115-month sentence of imprisonment continues to be appropriate to: promote respect for the law; provide just

punishment; adequately deter criminal conduct; and, protect the public from the Defendant, thereby satisfying the applicable Section 3553(a) Factors.

CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Compassionate Release Motion (ECF No. 360) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that the Clerk of Court mail a copy of this Order to the Defendant at his current address of record, including the notation "LEGAL MAIL" on the mailing envelope.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  May 31, 2024
        Central Islip, New York